**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                      **Case No. 8:20-cr-368-T-60CPT**

**WASHINGTON VALENCIA GAMBOA**
_____/

## DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE

Defendant Washington Valencia Gamboa, by and through undersigned counsel, pursuant to Title 18, United States Code §§ 3553(a) and 3661, and Rule 32(i) of the Federal Rules of Criminal Procedure, moves this Honorable Court for a downward variance from the applicable advisory Sentencing Guidelines ("Guidelines") range and, in addition, presents the following relevant information for the Court to consider in determining a reasonable sentence to impose in this case:

### BACKGROUND

1. On December 3, 2020, Mr. Gamboa was indicted for conspiracy to distribute and possession with intent to distribute five kilograms or more of a mixture and substance containing a detectible amount of cocaine, in violation of 46 U.S.C. §§ 70503(a), 70506(a), and (b), 18 U.S.C. § 2 and 21 U.S.C. § 960(b)(1)(B)(ii) (Doc. 1).

2.     On February 2, 2021, Mr. Gamboa pleaded guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine while onboard a vessel subject to United States Jurisdiction (Doc. 83). He immediately accepted responsibility for his minor role in what clearly appears to be a large criminal drug smuggling enterprise (Doc. 47).

3.     The Presentence Investigation Report ("PSIR") has been completed in this case and it reflects a total offense level of 33 and a criminal history category of I (PSIR ¶¶30 & 36). This results in an advisory range of 135 to 168 months' incarceration (PSIR ¶58).

4.     Sentencing is scheduled before this court on Thursday, April 29, 2021 at 2:30 p.m.

**LEGAL ARGUMENT**

5.     As outlined above, Mr. Gamboa is facing an advisory term of incarceration of 135 to 168 months (PSIR ¶58).

6.     Mr. Gamboa respectfully requests this Court grant his request for a downward variance from the advisory guideline range pursuant to the factors set forth in 18 U.S.C. § 3553(a). See, *United States v. Booker,* 543 U.S. 220 (2005); *Rita v. United* States, 551 U.S. 338 (2007). Specifically, when considering a downward variance from the applicable guideline range, Mr. Gamboa requests that the Court consider the nature and circumstances of the case and his role therein, his

history, characteristics, post-arrest and post-plea conduct, his motivation to commit the offense, the issues of deterrence and recidivism, and the need to avoid unwarranted sentencing disparities.

### A.      The Nature and Circumstances of the Instant Offense

7.      The circumstances surrounding this case are outlined in the PSIR and Mr. Gamboa does not dispute those facts (PSIR ¶10-15).

8.      In reviewing the circumstances surrounding this case, one can readily conclude that Mr. Gamboa played a minor role in a much larger drug smuggling enterprise (PSIR ¶¶10-15).   Mr. Gamboa occupied a go-fast vessel ("GFV") where one bale of cocaine was found on board.  The occupants of the GFV were observed jettisoning packages and ultimately bales of cocaine were found in the water matching the packaging of the one bale on board.  (PSIR ¶13).

9.      Mr. Gamboa does not deny the illegal nature of his actions. He takes full responsibility and appreciates the seriousness of the offense and the harm his part in the conspiracy could have ultimately caused.  However, he emphasizes his minor role in the grand enterprise by pointing out that he was not a navigator, purchaser, or distributer, and had very little proprietary gain.   In fact, he had no equity interest in the drugs being transported.  He had absolutely no decision-making authority or authority to alter plans once he stepped foot on his assigned vessel.

10. Mr. Gamboa humbly requests that he be viewed as having a minor role in this conspiracy when compared to those known and unknown to the Government because regardless of the weight of narcotics involved, he was unaware of the exact nature of the cargo, understanding only that it was illegal drugs and that it would be delivered to unknown persons at the end of their journey.

11. The facts of this case are absent any acts of violence.

**B.   The History and Characteristics of Mr. Gamboa.**

12. Mr. Gamboa was born in Buenaventura, Columbia, and he is 29 years old (PSIR ¶40).

13. Mr. Gamboa's parents separated when he was born, and he continued to live with his biological mother who passed away five (5) years ago due to unknown causes. He was very close to his mother and her death was a significant loss in his life (PSIR ¶41 & 43).

14. Mr. Gamboa had no relationship with his father and his father played no role in his upbringing (PSIR ¶41). When his mother passed away, Mr. Gamboa reconnected with his biological father, who is in poor health with bad vision and one amputated leg, requiring him to be confined to a wheelchair (PSIR ¶40).

15. Mr. Gamboa has six (6) maternal half siblings who all lived in Columbia and approximately 18 paternal half siblings of whom he knows very little

about. One maternal brother died at the age of 40 and another was killed at the age of 30 (PSIR ¶42).

16.     Mr. Gamboa's brother taught him how to fish at an early age so the family could eat and sell to survive.  When there was no fish to sell, his mother found other work to support the family (PSIR ¶43).

17.     Mr. Gamboa's family had limited financial resources for food, clothing and other necessities, but despite his life of poverty, he maintains that he had what he needed, had a good relationship with his mom and denies, any history of abuse (PSIR ¶46).

18.     Mr. Gamboa has been in a relationship with the same woman for the last 14 years.  Together, they care for his two children from a previous relationship. (PSIR ¶52).

19.     Mr. Gamboa was diagnosed with "weakness of the brain" which causes dizziness and vision problems (PSIR ¶49).

20.     Mr. Gamboa has never attended any formal schooling and although he speaks Spanish, his "head problem" contributed to his inability to read and write the language (PSIR ¶53).

21.     Mr. Gamboa does not drink alcohol, does not use illicit substances, and has no mental health issues (PSIR ¶¶51-52).

22.     Mr. Gamboa fishes to support his family but during the Covid-19 pandemic, he learned to work on boat motors for supplemental income (PSIR ¶55).

23.     Mr. Gamboa committed the offense, in part, because he was concerned about his and his family's safety (PSIR ¶73).

**C.     Sentence to Afford Adequate Deterrence.**

24.     Both the Sentencing Guidelines and 18 U.S.C. § 3553(a) require the sentencing court to consider the characteristics of the defendant that make it more or less likely that the defendant will reoffend.

25.     Mr. Gamboa is requesting this Court impose a downward variance because any period of time incarcerated and away from his family will accomplish the following: reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

26.     Mr. Gamboa's post arrest conduct of immediate acceptance of responsibility is indicative of self-rehabilitation, respect for the law, and willingness to atone for the harm he has caused.

27.     Additionally, but equally important, Mr. Gamboa has no prior criminal record, legally supported his family for years working as a fisherman, and does not drink alcohol or consume illegal substances.  These facts all suggest that there is an extremely low probability of recidivism, and that he poses little future risk to our society.  More importantly, Mr. Gamboa carries the extra incentive not to recidivate

based on his obligations and responsibilities relating to his live-in girlfriend of 14 years and his two children.

28.     Mr. Gamboa is eager to learn one or more trades while incarcerated in the area of culinary and mechanical fields. These efforts will allow him to obtain gainful employment so he can support his family upon his ultimate return to Columbia.

**D.      Need to Avoid Unwarranted Sentencing Disparities and to Promote Disparities where Warranted.**

29.     There are numerous sentences available for comparison to this case. Crewmembers are always being recruited, manipulated, and enticed with payments that far exceed a standard fisherman's monthly salary and those crewmembers are routinely prosecuted in this and other districts.  A non-exhaustive review of recent sentences in this district show an emerging pattern in sentencing ranges below Guidelines.

**WHEREFORE,** Mr. Gamboa respectfully requests this Honorable Court consider a downward variance and impose a sentence below the advisory guideline range.

Respectfully Submitted,

BY:   s/ *Amanda Powers Sellers, Esq.*
        AMANDA POWERS SELLERS, ESQ.

<u>CERTIFICATE OF SERVICE</u>

**I CERTIFY** that on April 23, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

BY:  s/ *Amanda Powers Sellers, Esq.*
AMANDA POWERS SELLERS, ESQ.
LAW OFFICES OF POWERS SELLERS &
FINKELSTEIN, PLC
4625 East Bay Drive, Suite 313
Clearwater, FL 33764
Telephone:  727-531-2926
Facsimile:  727-531-2706
E-Mail: amanda@psffirm.com
Florida Bar # 011643
Counsel for Defendant