UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA CRIMINAL DIVISION

UNITED STATES OF AMERICA

vs.                                                   Case No.  8:20-CR-368-T-60CPT

ENRIQUE LEON ARDON
_____/

## SENTENCING MEMORANDUM

COME NOW, the Defendant, ENRIQUE LEON ARDON,   by and through his undersigned counsel, hereby files this his Sentencing Memorandum.

## Procedural History

On December 3, 2020, Mr. Ardon was charged by Indictment of the offense of Conspiracy to Possess With Intent to Distribute Five Kilograms or More of Cocaine While on Board a Vessel Subject to the Jurisdiction of the United States, in violation of 46 U.S.C. §§70503 (a); 70506 (a) and (b) and Title 21 U.S.C.S. 960(b)(1)(B)ii.  On January 26, 2021, the defendant pleaded guilty to Count 1 of the indictment, and was adjudicated guilty on February 5, 2021.

## Defendant's Personal History

Mr. Ardon is a 44-year-old Costa Rican National.  Like many working-class Costa Ricans, Mr. Ardon's formal education began when he was 6, and ended roughly 6 years later, when schooling became non-mandatory, and he became old

enough to enter the workforce. He can competently read and write Spanish, but these skills are not advanced. He has an extremely limited knowledge of English. By trade, Mr. Ardon worked as a jeweler for his entire adult life, making simple jewelry and trinkets usually intended for the crucial tourist trade in Costa Rica.

Mr. Ardon lives happily in a stable, connubial relationship with Liliana Contreras, who would likely be considered a "common-law" wife in an Anglo-American legal system. He has a total of 9 children that he considers his own and they range in age from 26 to 4. His 6 oldest children are grown and independent, and his youngest 2 live with another woman, and for whom he has financially provided. This arrangement is open and accepted by all parties. Mr. Ardon remains close to all his children and has or is still financially supporting all of them. By American standards, Mr. Ardon's family life may appear somewhat unusual, but his situation is commonplace in Costa Rica - a country that historically values a stress-reduced, live-and-let-live lifestyle that is captured by a national phrase "*Pura Vita*". Indeed, before the pandemic, the only source of significant stress in Mr. Ardon's life is the health of his teenage daughter, Dayanna. Dayanna suffers from a case of congenital hydrocephaly. She requires constant medical care and since Mr. Ardon's incarceration, he has had reports from his family that Dayanna required emergency surgery in January 2021. This remains his biggest concern.

Mr. Ardon has never had a significant legal issue in his life.  He has no prior convictions or even arrests in Costa Rica.  He would occasionally drink and smoke socially and has never used cocaine or any "hard" drugs.  Before the spring of 2020 he was not involved in any part of the drug trade.

Like much of the rest of the world, Mr. Ardon's relatively carefree life was rocked by the COVID-19 pandemic.  Seemingly overnight, his jewelry-making trade, largely dependent on disposable income and tourist trade, was all but wiped-out.  Desperate for an alternative source of income, Mr. Ardon became increasingly open to suggestions he engage in a risky, but potentially lucrative, trip to Columbia.

### The Offense

Sometime in April 2020, Mr. Ardon came into contact with individuals he knew were connected to a business that involved moving "merchandise" from Colombia. The exact nature of this merchandise was rarely explicitly vocalized – a but the defendant knew it involved transport of illicit drugs.  In early May 2020 a friend introduced him to "Captain Carlos" and there was a discussion where it was agreed he would make a trip to Colombia and do what he was told.  In return, he was given $800.00 cash "for his family" was promised a total of roughly the equivalent of $20,000, in a combination of cash and discounted gold he could potentially use in the future for his jewelry business. There was never any specific

discussion about his duties, and at one point Mr. Ardon somewhat sheepishly informed Captain Carlos that he had no idea how operate a boat.

In mid-May 2020, the defendant received the call and he and another individual made the were driven to a port in Costa Rica and began the trip to Colombia. It was the first time Mr. Ardon had ever been out of his country and the first time he had ever been on the open sea.

This began what would end up being the beginning of a 5-month ordeal that would keep him in various camps in Colombia, with various changes in the organization(s) that was "employing" him. In fact, during one period of this stay, Mr. Ardon, along with his "bosses", were effectively held hostage by Colombian guerillas looking to be paid a "drug tax" before they would be allowed to complete their business. Mr. Ardon was never formally told anything, but the scuttlebutt was that the original "Hefe" was short of money and that Mr Ardon and his companions were, in effect, laborers without an employer. It was made clear that none of them were free to leave. At some point in the late summer of 2020, Mr. Ardon's original crew were allowed to leave, (presumably to complete a smuggling operation), while Mr. Ardon was left behind. He was placed with a new group of individuals, none of whom he had ever met before, and he was made to understand that they would be his new crewmates.

Mr. Ardon was detained at sea on November 23, 2020. The grand jury indicted him on December 3, 2020. He pled guilty and readily admitted his guilt before the Honorable Tuitte on January 26, 2021. His sentencing is scheduled for April 29, 2021.

### United States' Probation's Guideline Calculation

Based upon the total amount of drugs involved the United States Probation Officer calculated Mr. Ardon's base offense level to be 38 (PSR 6 ¶ 22). The PSR also correctly calculates a two (2) level safety valve reduction pursuant to U.S.S.G. 2D1.1(b)18, thereby calculating Ardon's total offense level to be 36; criminal history category I. With a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. 3E1.1 (a) (PSR 7 ¶ 28) and a one (1) level reduction for timely notification of intent to plead guilty pursuant to U.S.S.G. 3E1.1 (b) (PSR 7 ¶ 29) they calculated his total offense level to be 33. (PSR 7 ¶ 30 and PSR 11 ¶ 60). This, with no other considerations, calls for a recommended guideline sentence of 135 to 168 months imprisonment.

### Objection to Unites States' Probation Guideline Calculation

The undersigned respectfully objects to the United States' Probation calculation. They failed to consider an additional three (3) level reduction pursuant to 3B1.2 and an additional four (4) level reduction pursuant to 2D1.1(a)(5). Mr.

Ardon's base offense level should be 26, criminal history category I. This, without regard to any further consideration, would call for a 63–78-month term of imprisonment.

## Mitigating role adjustment pursuant to U.S.S.G. §3B1.2

Mr. Ardon respectfully submits that he is eligible for a mitigating role adjustment, pursuant to U.S.S.G. § 3B1.2, which provides:

> Based on the defendant's role in the offense, decrease the offense level as follows: (a) If the defendant was a minimal participant in any criminal activity decrease by 4 levels. (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels.

We respectfully submit Mr. Ardon qualifies for a three (3) level mitigating role adjustment, and if not that, then certainly should be considered for a 2-level mitigation.

The commentary application notes 4 and 5 define the characteristic as follows:

4. **Minimal Participant-** Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in the criminal activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and the activities of others is indicative of a role as minimal participant.

5. **Minor Participant-** Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal.

3B1.2 application note 3(c) includes "a non-exhaustive list of factors" for the court to consider in determining whether to apply a mitigating role adjustment and, if so, the extent of the adjustment."

They are as follows:

(i)     the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)     the degree to which the defendant stood to benefit from the criminal activity.

Conceding arguments could be made against the last of these Each and every one of these five factors establishes that Mr. Ardon should receive a three (3) level adjustment.

Mr. Ardon had no clue as to the "scope or structure of the criminal activity". He had no idea who they were to meet or where they were going and even how to get there. He was not involved in acquiring the drugs, arranging for their distribution, or scheduling the times and places for their movement. With respect to decision-making authority, responsibility, and discretion, these were simply not part of his. The only "decision making authority and influenced" he possessed was to go where he was told to go and doing what he was told to do.  At the beginning of the undertaking, he only vaguely knew who his employer was rumored to be, and in the end, he had no idea who or what he was working for.

Finally, with respect to what he stood to benefit from this criminal activity. Mr. Ardon was promised a roughly $20,000 amount of cash or gold (hopefully to be useful in his jewelry business), and besides the $800.00 described as a "stipend for his family" he never received any other money at all for his bad decision.

In short, Mr. Ardon's role was "perform[ing] a limited function in the criminal activity." U.S.S.G. §3B1.2 App.N. 3(A). As the Application Note states, "[A] defendant who is convicted of a drug trafficking offense whose participation in that offense was limited to **transporting** or storing drugs…*may receive an adjustment under this guideline."*

**<u>Mr. Ardon is substantially less culpable than the average participant.</u>**

Mr. Ardon is substantially less culpable than the average participant. He was not directly connected with the larger drug organization. He did not put this enterprise together and besides guessing, he had no specific knowledge of who did. He had no role in planning or distribution of this criminal enterprise. He had absolutely no involvement or any say in the operation. He did not own the drugs or the vessel.

### Mr. Ardon is substantially less culpable than his co-conspirators.

Mr. Ardon is not only less culpable than the owners of the vessels and the cocaine, but he is substantially less culpable than his indicted co-conspirators.

He is substantially less culpable than Bryan Alberto Duncan Rankin. The captain of the vessel.  He is less culpable than Washington Valencia Gamboa,; who appeared to have some authority. He was the mechanic and ostensibly in charge of protecting the cocaine. Mr. Ardon is less culpable than Jeffery Danovan Nixon Mendoza, who appeared to have the coordinates and worked the GPS devise.

Mr. Ardon never loaded the cocaine.   He never operated or even knew how to operate the boat or the GPS devise.  He does admit that, under direct instruction he helped throw the bales overboard when the go-fast was detected.

### Mr. Ardon's base offense level pursuant to 2D1.1

If this court finds Mr. Ardon qualifies for a 3B1.2 adjustment, then his base offense level is guided by 2D1.1(a)(5). This provides as follows:

2D.1.1(a)(5) the offense level specified in the Drug Quantity Table set forth in subsection (c), except that if (A) the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level under subsection (c) is (i) level 32, decrease by 2 levels; (ii) level 34 or level 36, decrease by 3 levels; or (iii) level 38, decrease by 4 levels. If the resulting offense level is greater than level 32 and the defendant receives the 4-level ("minimal participant") reduction in §3B1.2(a), decrease to level 32.

Accordingly, since the offense level specified in the Drug Quantity Table is calculated as a 38m should the court find he qualifies for a mitigating role, it is respectfully submitted that Mr. Ardon's base offense level shall be reduced by four (4) levels.

## Application of 18 U.S.C. § 3553(a)

Mr. Ardon regrets his commission of a serious federal crime and understands the need for punishment. He submits, however, that the nature and circumstances of his offense, his personal history and characteristics, weigh in favor of a sentence significantly less than suggested by the Department of Probation.

## The Purposes of Sentencing

Section 3553(a)(2) sets forth the purposes of sentencing, which can be summarized as:

(1) just punishment;

(2) deterrence;

(3) protection of the public; and

(4) rehabilitation.

Just Punishment

Mr. Ardon's conduct, in a conspiracy to distribute illegal drugs, was a violation of law and must be justly punished in a way that constitutes appropriate retribution and promotes respect for the law. It is respectfully submitted that a sentence no longer than fifty-one (51) month sentence will demonstrate to him and to other offenders, and to the public that such conduct is reprehensible and heavily punished under the law.

Deterrence

Mr. Ardon has no criminal record in Costa Rica and it is surely no coincidence that his one-time involvement in this crime was related directly to his poverty, which was related to a once in a lifetime pandemic. Fifty-One (51) months of incarceration with the inability to support his family and help in the care of his ill teenage daughter is more than adequate for this purpose. As for general deterrence: By any standard, 51 months in federal prison is severe enough to dissuade others from committing similar crimes.

Protection of the Public

Other than this one bad decision, for which he paid dearly even before his incarceration, Mr. Ardon has never been, and is not now, a threat to the safety or

well-being of the public.   This consideration requires no additional period of incarceration.

Rehabilitation

Being away from his family and learning a trade while incarcerated will enable Mr. Ardon to have a crime free life.   If possible, Mr. Ardon would like to receive training in operating heavy equipment, as construction is expected to revive in his come country of Costa Rica.   Such training, if available, can be completed with said sentence.

## **The Kinds of Sentences Available (and related costs)**

Since in this case only incarceration is available, the cost of this punishment is a relevant consideration. At the rate of $39, 365.00 per year (PSR 12 ¶ 69), any incarceration beyond that which is necessary represents an unjustified expenditure of public funds. Accordingly, it is respectfully submitted that a sentence of fifty-one (51) months is sufficient to accomplish the goals of sentencing at a justifiable cost.

## **Conclusion**

Based on the foregoing arguments and legal authority, Mr. Ardon respectfully requests a sentence of 51 months. Such a result will be consistent with one of the main goals of the Guidelines by ensuring that he does not receive the same sentence as individuals who are more culpable than him, thus running astray

of the guiding goal that similarly situated defendants be punished similarly. Given Mr. Ardon's specific role in the conspiracy, he should not receive the same sentence as those who were far more involved.

Accordingly, with a base offense level of 38, a three (3) level reduction pursuant to 2D1.1(a)(5), a three (3) level reduction for acceptance of responsibility, a two (2) level reduction for qualifying for the safety valve provision, and a three (3) level minor role reduction pursuant to 3B1.1.  His total offense level should be 26. With a criminal history category of I, his guideline imprisonment range should be 63-78 months. The undersigned respectfully moves this court for an additional two (2) level variance and request he be sentenced to 51 months accordingly.

DATED this <u>26 day of April 2021.</u>

Respectfully submitted,

<u>/s/Edward M Panzica</u>
Edward M Panzica, Esquire
FBN 0710059
Attorney for Enrique Ardon

## Certificate of Service

I hereby certify that on <u>April 26, 2021</u> I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system was forwarded to all parties of record and to Office of the U.S. Attorney, Middle District of Florida, Tampa Division.

<u>/s/Edward M Panzica</u>
Edward M Panzica, Esquire
FBN 0710059
Attorney for Enrique Ardon
1601 East Bay Drive, Unit 2

Largo, Florida 33771
Panzicaoffice@gmail.com