# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                                    **Case No. 8:20-cr-368-TPB-CPT**

**JEFRY NIXON MENDOZA**

_____/

## SENTENCING MEMORANDUM ON BEHALF OF
## DEFENDANT, JEFRY NIXON MENDOZA

**COMES NOW** the Defendant, **JEFRY NIXON MENDOZA** ("Mr. Mendoza"), by and through his undersigned counsel, and hereby files the following Sentencing Memorandum setting forth factors that the Court should consider in determining what type and length of sentence is sufficient but not greater than necessary to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). In support, Mr. Mendoza states the following:

## I.    INTRODUCTION

On March 9, 2021, Mr. Mendoza entered a guilty plea to Count I of the Indictment charging him with conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), and punishable under 21 U.S.C. § 960(b)(1)(B)(ii).

Mr. Mendoza does not dispute the actions giving rise to the charges contained in the Plea Agreement and he is very remorseful for his actions.  Mr. Mendoza accepts full responsibility for his conduct and respectfully requests that this Court consider the following information in mitigation of his sentence and utilize it to fashion an appropriate sentence.

## II.   SENTENCING UNDER BOOKER

In 2005, the United States Supreme Court determined that judges are no longer required to apply the United States Sentencing Guidelines ("Guidelines") in a mandatory fashion when determining the appropriate sentence for a defendant. United States v. Booker, 543 U.S. 220, 245, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Since then, a sentence must be "reasonable" for it to be considered lawful.  See United States v. Kimbrough, 552 U.S. 85, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007); Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 24 445 (2007).

### a.  The Sentence Must be Sufficient, but not Greater than Necessary

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."  Gall, 552 U.S. at 49.  "[T]he Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however."  Id.  "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support

2

the sentence requested by a party.  In so doing, he may not presume that the Guidelines range is reasonable." Id. at 49-50.

### b.  The Sentencing Guideline Calculation in this Case

A Presentence Investigation Report ("PSR") has been prepared by the United States Probation Office. The PSR placed the total offense level at 33, with a criminal history Category of I, and calculated a Guideline range of 135 to 168 months, with two (2) to five (5) years of supervised release to follow.  Defendant Objects and posits that a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2 and an offense level reduction pursuant to 2D1.1(a)(5) are appropriate. The appropriate offense level should be 27 resulting in a Guideline range of 70-87 months.  Additionally, as Mr. Mendoza will be immediately deported once any term of imprisonment ends, he respectfully requests that any term of release be ordered as unsupervised.

### III.    ANALYSIS OF THE 18 U.S.C. § 3553(a) FACTORS

The Court must consider the § 3553(a) factors, weigh them properly, and fashion an appropriate sentence based on the facts of the case.  United States v. White, 416 F.3d 1313, 1318 (11th Cir. 2005) (per curiam).  Pursuant to 18 U.S.C. § 3583(e), the Court must consider sections 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

### a.  The Nature and Circumstances of the Offense and the History and Characteristics of the defendant

In considering the nature and circumstances of the offense and the

characteristics of the Defendant, the Court can consider "written and oral arguments presented by the defendant," "supportive letters," whether the defendant shows "any remorse," and other mitigating factors in determining the appropriate sentence. United States v. Waters, 799 F.3d 964, 975 (8th Cir. 2015).

In this case, Mr. Mendoza is a twenty-five (25) year old man born in Nicaragua. He has a six (6) year old son that lived with him and Ingrid Galadarza Zapata, a twenty-four (24) year old woman that he maintained a four-year relationship with prior to the events leading to this prosecution. Ms. Zapata's contribution to the household was as a homemaker. She and Mr. Mendoza's son now lives with Mr. Mendoza's mother in Nicaragua. As Mr. Mendoza's father died approximately twenty years ago, he was raised in a single parent household struggling to obtain basic necessities and enough food to eat. He has three siblings, and all had to work dating back to childhood to make sure that the family could survive.

Mr. Mendoza worked as a fisherman and made a maximum of $300 dollars selling his fish to a processing plant and others during good months. However, as fishing is not always good, there were months that he made much less. This $300 in conjunction with having fish to bring home made it possible for him to feed his family and provide for some, but not all of their basic needs. COVID-19 changed everything. As many countries and businesses were forced to shutdown and restrict

residents from many normal activities, Mr. Mendoza's ability to earn a living was drastically affected. The places he sold his fish closed and he had no other options to sell to. Notably, going out in public placed his safety, and that of his family in jeopardy with every individual he encountered. However, he needed to try to earn money. Unlike here in the United States, there were no online job opportunities, and no work from home jobs or Government assistance that his family could count on. There was no ban on foreclosures or evictions. They did not have the support, assistance, and protection of their government. In Central America, if you don't work, you don't eat. If you don't have money, you don't have shelter.

Being responsible for his family's survival required that Mr. Mendoza make a way to get money and food for the family. Mr. Mendoza was desperate. This desperation greatly contributed to Mr. Mendoza saying yes when offered a one-time job transporting what was never truly detailed, but was assumed by Mr. Mendoza to be some type of drugs. Mr. Mendoza was to be paid $10,000.00 for the trip. As Mr. Mendoza only made $300 during a good month, this money would be life changing for his family. Mr. Mendoza was given $500 dollars with the remainder promised once the trip was completed.

After receiving the $500, everything changed once Mr. Mendoza subsequently met up with the man that hired him. At this point, Mr. Mendoza was no longer free to change his mind, nor could he leave. He was driven to a place

5

where another man entered the vehicle and blind folded Mr. Mendoza.  This was the start of an ordeal that lasted months, with Mr. Mendoza being held at gun point, and taken to the forest where he lived in a tent for nearly 2 months.  He was forced at gunpoint to do a video to his family describing money he owed associated with the drug venture he was hired for.  As Mr. Mendoza's family members were penniless, to the extent this was an effort to collect a ransom, their efforts proved fruitless.

After being moved several times by those in control, Mr. Mendoza and his co-defendants were put together to go on the relevant vessel for the purpose of transporting cocaine.  Mr. Mendoza never received any more money and his family is now forced to try to survive without him.

### b.  To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

As previously stated, Mr. Mendoza was born in Nicaragua and had never been to the United States prior to being brought here by the U.S. Coast Guard.  The trip was to start in Costa Rica with the vessel meeting up to get the cargo, then they were to return the shipment back to Costa Rica.  As "the possession of drugs for immediate personal use is not a criminal offence in Costa Rica,"[1] Mr. Mendoza was not able to appreciate the criminal nature of his actions and did not recognize any possible connection to the United States.  In fact, Costa Rica "is clearly making an effort to

---

[1] druglawreform.info, Costa Rica, http://www.druglawreform.info/en/country-information/central-america/costa-rica/item/5017-costa-rica (last visited 8/2/2021).

6

abandon the traditional zero tolerance approach and its view of drug-related issues is gradually shifting to a focus on justice, health, safety, education, and development."[2]

Mr. Mendoza has no previous criminal record.  He grew up with respect for the law and had no idea that he was breaking the law in the United States with his actions.  Mr. Mendoza has been a hard worker all of his life and but for this regrettable instance, had no issue with the law.  Notably, his acceptance of responsibility and willingness to cooperate evidences his respect for the law.

The average life span for a male in Nicaragua is 72.5 years.[3]  As Mr. Mendoza turned 25 on March 20, 2021, it is anticipated that he will live for another 47.14 years, which calculates to Mr. Mendoza having 565.68 months remaining to live. This means that the Guidelines call for Mr. Mendoza to spend between 24% and nearly 30% of the rest of his life in prison in this case.  Based upon the totality of the circumstances, a just sentence would be one that does not require Mr. Mendoza to spend more than 76 months in prison, which represents 13.4 percent of the anticipated life Mr. Mendoza has remaining.  To be clear, Defendant asks for no

---

[2] Id.

[3] worldlifeexpectancy.com, Nicaragua: Life Expectancy, https://www.worldlifeexpectancy.com/nicaragua-life-expectancy#:~:text=Nicaragua%3A%20Life%20Expectancy%20According%20to%20the%20latest%20WHO,Nicaragua%20a%20World%20Life%20Expectancy%20ranking%20of%2068 (last visited 7/30/2021).

more than a 76-month sentence.  The Court may sentence Mr. Mendoza to less than 76 months;  however, Mr. Mendoza posits that based on the circumstances, any sentence that exceeds 76 months would not be just.  Additional argument explaining why a sentence of no more than 76 months constitutes a just sentence will be discussed further in section IV of this Memorandum.

**c.  To Afford Adequate Deterrence to Criminal Conduct, Protect the Public from Further Crimes of the Defendant and Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner**

Prior to being detained and brought to the United States, Mr. Mendoza had never been to this country and never tried to come here.  He also has no plan of returning once this ordeal is complete.  Next, considering the facts of this case, the sentence he currently faces, and the potential 851 enhancement resulting in a 15 minimum mandatory sentence should he perpetrate another similar act, this along with his experience in the American criminal justice system during COVID-19 provides adequate deterrence to any further criminal conduct by Mr. Mendoza.

As Mr. Mendoza quit school to enter the workforce for financial reasons and but for his limited skillset and lack of education, he was unable to find a way to legally provide for his family, he would greatly benefit from vocational training. Specifically, Mr. Mendoza needs to be provided English reading, writing, and speaking classes, along with GED classes.  He would benefit from and requests

vocational training in welding, computers, machine repair, and any other trade needed in Nicaragua. Generally, the lack of opportunity to provide for his family and secure gainful employment greatly contributed to Mr. Mendoza's bad decision making and associated belief that taking a job to transport what was assumed to be drugs would assist in his taking care of his family.

## IV.    A DOWNWARD VARIANCE IS WARRANTED IN THIS CASE

The Court has discretion in fashioning the appropriate sentence for Mr. Mendoza. Booker, 543 U.S. 220, 245, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). "The district court has wide discretion to decide whether the section 3553(a) factors justify a variance." United States v. Rodriguez, 628 F.3d 1258, 1264 (11th Cir. 2010). "There is no requirement that a district court must impose an enhancement before granting a variance." Id.

According to the United States Sentencing Commissions Fiscal year 2020 report, the national mean sentence for drug trafficking was 76 months and the median sentence was 60 months.[4] However, in the Middle District of Florida the mean sentence for drug trafficking was 96 months and the median sentence was 87 months.[5] That translates into defendants in the Middle District of Florida receiving

---

[4] ussc.gov, United States Sentencing Commission, 2020 Federal Sentencing Statistics, Florida Middle, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2020/flm20.pdf (last visited 7/30/2021).

[5] Id.

sentences in which the mean sentences were 26.3% higher and the median sentences were 45% higher than the national numbers. This suggests that either the sentences in all the rest of the Districts in the federal system are too low, or the sentences in the Middle District of Florida are too high. It is very likely that the failure to apply mitigating role adjustments account for some, if not much of this disparity. Based on the Sentencing Commission's report, a sentence of 60 to 76 months is appropriate for drug trafficking. Defendant Objects and requests the following role adjustments.

Based on Mr. Mendoza's role in this crime, the Court should consider that he should qualify for a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2 and an offense level reduction pursuant to 2D1.1(a)(5). Pursuant to U.S.S.G. § 3B1.2, a defendant may receive a decrease in their offense level as follows:

> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

Additionally, a person that performs a limited function in the criminal activity, such as a person "convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs…may receive an adjustment under this guideline." U.S.S.G. § 3B1.2 App. N. 3(A). Further, a minor participant applies to a defendant "who is less culpable than most other participants in the

10

criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 App. N. 6. The application of minimal and minor role adjustments require the consideration of the following non-exhaustive list of factors:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;

> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;

> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

> (v) the degree to which the defendant stood to benefit from the criminal activity.

3B1.2 App. N. 3(C).

Here, Mr. Mendoza was only responsible for transporting the cocaine once, and for a short period of time. As previously noted, once he agreed to take the job transporting an unspecified cargo for one trip, he was locked in and could not change his mind. Not only did Mr. Mendoza not participate in any planning or exercise any decision-making authority, he was held captive for several months prior to the voyage. Mr. Mendoza was not made aware of the scope and structure of the criminal activity. In fact, the organizers kept him in the dark as to the source of the drugs and who truly employed him. According to ARK Behavioral Health, a kilo of cocaine is

11

valued between $14,500 and $45,000 in the United States.[6] That means the value of the shipment recovered in this case was between $17.5 and $54.5 million dollars. Even if Mr. Mendoza would have received the $10,000 as promised, his share amounts to between 0.06% and 0.02% of the shipment's value. Ultimately, Mr. Mendoza and his co-defendants were hired because they were outsiders, desperate, had no value to the organization, were too afraid to ask questions and basically considered expendable. Even if the Court finds that the reductions do not legally apply, Mr. Mendoza respectfully asks that the Court considers such as a part of its 18 U.S.C. § 3553(a) factor determination. Specifically, a 2-level minor role adjustment in conjunction with the 4-level reduction pursuant to 2D1.1(a)(5) would result in a Guidelines calculation of 70-87 months. This would place the sentence requested by Mr. Mendoza within the Guideline calculation.

## V.  CONCLUSION

After the Court considers the arguments and analysis detailed above, there is sufficient evidence in mitigation to allow the Court to fashion a sentence either in departure, or via a variance from the advisory Sentencing Guidelines. Specifically, Mr. Mendoza respectfully requests that this court utilize this memorandum to impose

---

[6] ARK Behavioral Health, illicit-drugs, cocaine prices, https://www.arkbh.com/illicit-drugs/cocaine/prices/ (last visited on 8/2/2021).

a sentence of no more than seventy-six (76) months with two (2) years of unsupervised release to follow.

**WHEREFORE**, Jefry Nixon Mendoza prays that this Honorable Court will impose a sentence of no more than seventy-six (76) months with two (2) years of unsupervised release to follow.

Dated this 3rd day of August 2021.

Respectfully submitted,

A. FITZGERALD HALL, Esq.
FEDERAL DEFENDER

*/s/ Percy King*
Percy King, Esq.
Assistant Federal Defender
Florida Bar No. 0107357
400 North Tampa Street, Suite 2700
Tampa, FL. 33602
Telephone: 813-228-2715
Fax: 813-228-2562
Email: Percy_King@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of August 2021, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

Tereza Ohley, AUSA

*/s/ Percy King*
Percy King
Assistant Federal Defender

13